UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO:

AJAY REDDY,
Plaintiff,

v.

SPACE EXPLORATION TECHNOLOGIES CORP.
Defendant.
_____/

COMPLAINT

Plaintiff, AJAY REDDY, by counsel, sues the Defendant, SPACE EXPLORATION TECHNOLOGIES CORP. ("SpaceX") and as grounds alleges:

JURISDICTION, VENUE AND PARTIES

1. This is an action arising under the Civil Rights Act of 1871, 42 U.S.C. §1981 (§1981) seeking declaratory, injunctive and equitable relief, plus damages, costs, and reasonable attorney's fees.

2. The action is also cognizable under the Florida Civil Rights Act of 1992, §760.01 et seq, Florida Statutes ("FCRA").

3. Plaintiff AJAY REDDY ("REDDY") is an Asian-American of Indian descent previously residing in Brevard County, Florida.

1

4. Defendant SpaceX is a Delaware corporation and government contractor which is subject to the provisions of §1981, the FCRA, and Executive Order 11246, as amended.

5. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343, 42 U.S.C. 2000(e) and 29 U.S.C. §216(b), as this action arises under federal law.

6. The Court has jurisdiction over the state law claims incident to its supplemental jurisdiction.

7. Venue may be maintained in the Middle District of Florida pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices giving rise to this action were committed in this judicial district.

## CONDITIONS PRECEDENT

8. On or about June 29, 2020, REDDY filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations alleging race and national origin discrimination as well as retaliation under the FCRA.

9. More than 180 days have passed since Plaintiff has filed his charge and the FCHR has not issued a determination in regards to the same allegations.

## GENERAL ALLEGATIONS

10. REDDY was a fairing recovery engineer at SpaceX from October 28, 2019 to May 29, 2020.

11. Plaintiff was the only Asian fairing recovery engineer. Plaintiff was also the only racial minority in the parent Recovery organization of some dozens of engineers and technicians.

12. The fairing recovery program's primary goal was to catch large components of launched rockets—fairings—on ships equipped with large nets stretched above them. A successful catch allowed SpaceX to rapidly reuse the fairing in a subsequent launch, thus saving time and millions of dollars. If a catch was missed, the fairing could be recovered from the ocean using alternate methods.

13. Two white engineers were hired shortly before Plaintiff. Andrew Derhammer was transferred into fairing recovery from another position. Karl Burnett, like Plaintiff, was a fresh hire.

14. Because of the novel and unique nature of the fairing recovery program, all three engineers were unfamiliar with its specific techniques.

15. Burnett was given several days of training in California on the fairing recovery schema and thus acquired critical knowledge on how to perform his job. Prior to his transfer, Derhammer had access to engineers who designed the system and also acquired specialized knowledge.

16. In contrast, REDDY was not given this or similar training. Later, SpaceX claimed that Burnett flew across the country so that he could review documentation relating to the system.

17. Yet when Plaintiff asked for documentation, he was told that none existed. And when Plaintiff asked Burnett and Derhammer to share their knowledge, they refused to do so. Indeed, information and learning opportunities were often withheld from Plaintiff, such as the timings of training events, the ability to participate in training events, critical task details, and formal and informal meetings. As a direct, natural, foreseeable and proximate result, Plaintiff was humiliated and isolated, and his work performance was sabotaged.

18. Therefore, Plaintiff did make mistakes. These mistakes were apparently simply collected for future use, such as defense from litigation.

19. Notwithstanding the above, Plaintiff matchlessly executed his position's most important and fundamental duty: to protect and preserve human life.

20. The two fairing recovery vessels had properties which could easily maim or kill multiple crewmembers, and very nearly did so on more than one occasion. REDDY was apparently alone in appreciating the severity of the hazards inherent to the design of the system.

21. Without prompting, Plaintiff therefore proposed a practical response to the kinds of emergencies that could arise from these design flaws.

22. Though Burnett and Derhammer dismissed Plaintiff's assessments, management and senior leadership soundly agreed him and directed the immediate implementation of his solution. Interestingly, SpaceX later claimed that Plaintiff—who had never even been counseled for any safety-related issues—lacked safety consciousness and was "senseless" in his efforts.

23. Management unjustifiably blamed incidents and failures on Plaintiff while protecting Burnett and Derhammer, no matter how poor their performance.

24. For example, Derhammer once fouled a maneuver and critically damaged a fairing. Plaintiff, who was hundreds of miles away and had no control over the operation, was reprimanded for truthfully saying that such incidents were known to happen. Derhammer, who ruined millions of dollars of equipment, was not punished.

25. In another event, technician staff discovered that Burnett and Derhammer had used incorrect hardware to perform work on fairing components, which damaged the components and thus generated mission risk and imposed repair work onto others. Plaintiff, in contrast, had

provided Burnett and Derhammer the correct hardware, and had ensured that they knew that its use was mandatory. Though Burnett and Derhammer's reckless abuse of spaceflight hardware resulted in discredit and scrutiny from senior leadership, management took no corrective or disciplinary action. Shockingly, management allowed Plaintiff to be rebuked for spending the brief amount of time it took to identify and resolve the problem.

26. Throughout his time at SpaceX, REDDY was subjected to pervasive and severe harassment, including (but not limited to) wanton ridicule, intimidation, interference with his performance, and false statements about his performance.

27. Plaintiff often complained about the above to his management, which was indifferent and refused to take any corrective action. This harassment and discrimination, in flagrant violation of corporate and federal policies and standards, markedly changed the terms and conditions of Plaintiff's employment.

28. For example, REDDY was once punished based on a claim (which management had adopted without challenge or investigation) that he had failed to complete a task whose completion was required for vessel departure. The vessels had departed as planned, and when Plaintiff explained that he had, in fact, completed his task, management agreed that Plaintiff had done his job—he must have. But thereafter, management neither retracted its punishment nor took any other corrective action.

29. On one occasion, Burnett, at elevated volume, refused to invite Plaintiff to a critical technical meeting. On yet another occasion, Burnett, a peer, actually escorted Plaintiff out of a meeting with leadership. Plaintiff specifically and promptly complained about at least one of these

incidents, which took place in the full view of other SpaceX employees, but drew only further indifference from management.

30. REDDY was also frequently held to different performance standards than his coworkers.

31. For much of his time at SpaceX, Plaintiff had an acting manager, Brian Attiyeh, who had been placed to provide experienced leadership directly to the fairing recovery engineers. Attiyeh often commended Plaintiff's work performance.

32. When Plaintiff met with Attiyeh to discuss the relentless harassment he faced, Attiyeh agreed that this was unacceptable. But thereafter, Attiyeh took no corrective action.

33. Plaintiff also discussed his concerns with other SpaceX staff, many of whom agreed that there was a pattern of unacceptable behavior and encouraged Plaintiff to solve it.

34. Having exhausted all other options, Plaintiff then made verbal and written complaints to Human Resources about the harassment he was subjected to and management's refusal to correct the same, the disparate treatment he received from management, and how his lack of training was hampering his work performance. He hoped to receive the information he needed to excel at his job, and end the harassment and disparate treatment he faced.

35. These complaints had to be impartially investigated and acted upon according to company policy and the law, but were not. Instead, Human Resources attempted to make REDDY "walk back" his concerns, and indeed crafted excuses which it apparently delivered to those who Plaintiff complained about.

36. The only documentation management and Human Resources thereafter provided Plaintiff were two pages of technically imprecise notes. These notes did not explain fairing descent, communication between the fairing and the vessels, nor the vessels' specific behaviors.

37. According to SpaceX's position statement to the EEOC, REDDY's final manager, Robert Hill, then terminated his employment based on claims that during a group interview event, Plaintiff "ma[de] facial expressions in reaction to answers the candidate provided[.]" SpaceX claims that these alleged expressions made the candidate "feel uncomfortable."

38. The interview was intensive in its nature, and took place in a darkened room. Due to the COVID-19 pandemic, all participants were distanced from each other. And due to the seating arrangement, other employees had a direct view of only the back or side of Plaintiff's head.

39. Plaintiff did not make a face.

40. Neither in SpaceX's official position statement to the EEOC, nor at any previous point, have there even been allegations that Plaintiff engaged in any unusual, erratic, untoward, or inappropriate behavior such as sticking his tongue out or sneering—because he did not.

41. Hill, in fact, was present in the discussed interview and was thus aware of the lighting and seating conditions. Plaintiff had no opportunity to discuss this prior to his termination.

42. This claimed misconduct took place just three weeks after REDDY complained to Human Resources. Hill was aware of Plaintiff's complaints.

43. Thus, this bizarre pretext, that Plaintiff made someone feel uncomfortable with his face, is both a fabrication and a declaration of animus towards Plaintiff's appearance.

COUNT I RACE DISCRIMINATION (§1981 and FCRA)

44. Plaintiff adopts and reincorporates paragraphs 1-43 herein.

45. In addition to the above, and notwithstanding the that all of the fairing recovery engineers were in a start-up program and had similar duties and experience, Plaintiff was paid substantially less than other fairing recovery engineers.

46. The conduct of SpaceX, by and through the conduct of its agents, in discriminating against Plaintiff by paying him a substantially lower compensation package to perform the same job duties as similarly situated non-Asian engineers is a violation of the race discrimination provisions of the FCRA and §1981 and is discrimination on the basis of race.

47. As a direct, natural, foreseeable and proximate result of the actions and inactions of SpaceX, by and through the actions of its managerial and Human Resources personnel, Plaintiff has suffered injuries and losses including a violation of his statutory rights, economic loss, mental pain and suffering, extreme emotional stress, and loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, REDDY pray for the following relief:

a. Entry of judgment for restitutionary and compensatory damages, including but not limited to, damages for emotional pain and suffering, anguish, injury to reputation, and loss of capacity to enjoy life;

b. Award Plaintiff costs in this action, including reasonable attorney's fees and expert fees as provided by the FCRA and 42 U.S.C. §1988;

c. Any other equitable relief deemed appropriate by the Court.

## COUNT II NATIONAL ORIGIN DISCRIMINATION (FCRA)

48. Plaintiff adopts and reincorporates paragraphs 1-43 herein.

49. Notwithstanding the above, Plaintiff was paid substantially less than non-Asian workers holding the same job title and performing the same work herein.

50. The conduct of SpaceX, by and through the conduct of its agents, in discriminating against Plaintiff by paying him a substantially lower compensation package to perform the same job duties as similarly situated non-Asian coworkers and by taking disciplinary and punitive action against him due to his national origin is a violation of the national origin discrimination provisions of the FCRA.

51. As a direct, natural, foreseeable and proximate result of the actions and inactions of SpaceX, by and through the actions of its managerial and Human Resources personnel, Plaintiff has suffered injuries and losses including a violation of his statutory rights, economic loss, mental pain and suffering, extreme emotional stress, and loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, REDDY pray for the following relief:

a. Entry of judgment for restitutionary and compensatory damages, including but not limited to, damages for emotional pain and suffering, anguish, injury to reputation, and loss of capacity to enjoy life and punitive damages as provided by law;

b. Award Plaintiff costs in this action, including reasonable attorney's fees and expert fees as provided by the FCRA;

c. Any other equitable relief deemed appropriate by the Court.

## COUNT III RACE DISCRIMINATION FCRA AND §1981

52. Plaintiff adopts and reincorporates paragraphs 1-43 herein.

53. Notwithstanding the above, Plaintiff was paid substantially less money than other white employees, holding the same job title and performing the same work.

54. The conduct of SpaceX, by and through the conduct of its agents, in discriminating against Plaintiff by paying him a substantially lower compensation package to perform the same job duties as similarly situated white coworkers is a violation of the race discrimination provisions of the FCRA and §1981 and discrimination on the basis of race.

55. As a direct, natural, foreseeable and proximate result of the actions and inactions of SpaceX, by and through the actions of its managerial and Human Resources personnel, Plaintiff has suffered injuries and losses including a violation of his statutory rights, economic loss, mental pain and suffering, extreme emotional stress, and loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, REDDY pray for the following relief:

a. Entry of judgment for restitutionary and compensatory damages, including but not limited to, damages for emotional pain and suffering, anguish, injury to reputation, and loss of capacity to enjoy life; and punitive damages as provided by law;

b. Award REDDY costs in this action, including reasonable attorney's fees and expert fees as provided by the FCRA and 42 U.S.C. §1988;

c. Any other equitable relief deemed appropriate by the Court.

## COUNT IV RETALIATION FCRA AND §1981

56. Plaintiff adopts and reincorporates paragraphs 1-43 herein.

57. The conduct of SpaceX, by and through the conduct of its agents, in retaliating against Plaintiff, by altering the terms and conditions of his employment and by terminating his employment, was in violation of the FCRA and §1981.

58. As a direct, natural, foreseeable and proximate result of the actions and inactions of SpaceX, by and through the actions of its managerial and Human Resources personnel, Plaintiff has suffered injuries and losses including a violation of his statutory rights, economic loss, mental pain and suffering, extreme emotional stress, and loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, REDDY pray for the following relief:

a. Entry of judgment for restitutionary and compensatory damages, including but not limited to, damages for emotional pain and suffering, anguish, injury to reputation, and loss of capacity to enjoy life; and punitive damages as provided by law;

b. Award REDDY costs in this action, including reasonable attorney's fees and expert fees as provided by the FCRA and 42 U.S.C. §1988;

c. Any other equitable relief deemed appropriate by the Court.

## COUNT V BREACH OF CONTRACT

59. Plaintiff adopts and reincorporates paragraphs 1-43 herein.

60. Plaintiff was employed to assist with, facilitate, and further the fulfillment of SpaceX's contracts with the United States.

61. As such he was protected by Executive Order 11246, as amended.

62. The Department of Labor requires every governmental contractor to include in every contract with the United States the following language:

1. The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, gender identity, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, sexual orientation, gender identity, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.
2. The contractor will, in all solicitations or advancements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, or national origin.
3. The contractor will not discharge or in any other manner discriminate against any employee or applicant for employment because such employee or applicant has inquired about, discussed, or disclosed the compensation of the employee or applicant or another employee or applicant. This provision shall not apply to instances in which an employee who has access to the compensation information of other employees or applicants as a part of such employee's essential job functions discloses the compensation of such other employees or applicants to individuals who do not otherwise have access to such information, unless such disclosure is in response to a formal complaint or charge, in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or is consistent with the contractor's legal duty to furnish information.
4. The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

5. The contractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.
6. The contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.
7. In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated, or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.
8. The contractor will include the provisions of paragraphs (1) through (8) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

63. Plaintiff is an intended third party beneficiary of Executive Order 11246 as amended. The above-described language exists in every contract between Defendant and the United States.

64. SpaceX has breached its contracts with the United States by discriminating and retaliating against Plaintiff in the manner described above.

65. As a direct, natural, foreseeable and proximate result of the breach of contract by SpaceX, Plaintiff has suffered injuries and losses including a violation of his statutory rights, economic loss, mental pain and suffering, extreme emotional stress, and loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent.

WHEREFORE, REDDY pray for the following relief:

a. Entry of judgment for economic losses sustained in the past and to be incurred in the future;

b. Award Plaintiff costs in this action;

c. Any other equitable relief deemed appropriate by the Court.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

<u>/s/ G. Ware Cornell</u>

G. Ware Cornell, Jr.
Florida Bar No. 203920

Cornell & Associates PA
2645 Executive Park Dr
Weston, FL 33331

(954) 618-1041
(954) 944-1969 facsimile
ware@warecornell.com